UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| KEYSTONE RETAINING WALL SYSTEMS, INC., | Case No. 10-CV-4085 (PJS/JJK) |
| Plaintiff/Counterclaim Defendant, | |
| v. | ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION |
| BASALITE CONCRETE PRODUCTS, LLC; PACIFIC COAST BUILDING PRODUCTS, INC.; and BUILDERS MARKETPLACE, INC., | |
| Defendants/Counterclaimants. | |

Anthony J. Colucci, III and Marybeth Priore, COLUCCI & GALLAHER, P.C.; Leland S. Watson, WATSON LAW OFFICE, for Keystone Retaining Wall Systems, Inc.

Douglas Kirkman, WAGNER KIRKMAN BLAINE KLOMPARENS & YOUMANS LLP; Kristin B. Heebner, ANTHONY OSTLUND BAER & LOUWAGIE PA; Catherine Ashley Straight, LAW OFFICES OF CATHERINE ASHLEY STRAIGHT; R. Michael West, LAW OFFICES OF R. MICHAEL WEST, for Basalite Concrete Products, LLC, Pacific Coast Building Products, Inc., and Builders Marketplace, Inc.

Keystone Retaining Wall Systems, Inc. ("Keystone") brings this action for breach of contract, patent infringement, trademark infringement, trademark dilution, and unfair competition against defendants Basalite Concrete Products, LLC, Pacific Coast Building Products, Inc., and Builders Marketplace, Inc. (collectively, "Basalite"). Basalite brings assorted counterclaims in response.

On the basis of its patent-infringement and trademark-infringement claims, Keystone moves for a preliminary injunction forbidding Basalite from making and selling certain models

of concrete blocks and from using certain trademarks.  For the reasons that follow, the Court

grants the motion in part.

On the basis of Keystone's patent-infringement claims, the Court grants the motion and

enjoins Basalite from making, marketing, or selling the following models of Basalite blocks:

(1) Verazzo; (2) Potenzo; (3) Country Manor; (4) Century/Half Century Wall; (5) 133 Elite; and

(6) Ledge Creek.  The Court denies the motion with respect to the other accused models of

Basalite blocks.

On the basis of Keystone's trademark-infringement claims, the Court grants the motion

and enjoins Basalite from using all of the trademarks asserted by Keystone, except that the Court

denies the motion insofar as it applies to the "Palazzo Stone" trademark.

## I.  BACKGROUND

This case arises out of a commercial partnership gone sour.  Except as noted, the relevant

facts are undisputed.

Keystone owns various patents and trademarks related to concrete blocks that are used to

construct retaining walls.  Basalite makes and sells retaining-wall blocks.  In January 2002,

Keystone and Basalite entered into a license agreement under which Keystone licensed Basalite

to use various Keystone patents and trademarks in return for royalties on Basalite blocks.

Schramm Aff. Ex. A ("License Agreement") [Docket No. 68-1].  By its terms, the agreement ran

for four years, through December 2005.

December 2005 came and went, and the parties did nothing to formally renew the

agreement.  But for the next three years (through December 2008), Basalite continued to pay

Keystone the same royalties provided for in the license agreement, and Keystone continued to accept those royalties.

Things changed in January 2009.  Basalite decided that it was paying too much to use Keystone's patents and trademarks, and Basalite started paying royalties at a lower rate.  Over the next roughly fifteen months, Basalite and Keystone engaged in various discussions about their arrangement.  The parties hotly dispute whether they came to any kind of agreement and, if so, what their agreement was.

In March 2010, Keystone notified Basalite that, in Keystone's view, Basalite was in default under the parties' license agreement (the agreement that had expired in December 2005, and that may or may not have been extended or replaced by the words or actions of the parties).  Schramm Aff. ¶ 27 [Docket No. 68] & Ex. E [Docket No. 72-2].  And on September 29, 2010 — the same day that it filed this lawsuit — Keystone gave notice to Basalite that it would be terminating the parties' agreement (whatever that agreement may have been) effective October 29, 2010.  Schramm Aff. ¶ 29 & Ex. F [Docket No. 72-3].

Keystone and Basalite have very different theories about what terms governed their relationship between January 1, 2006 (when the previous written agreement expired) and October 29, 2010.  But the parties agree that as of October 29, 2010, Basalite no longer had any contractual right to use the patents and trademarks of Keystone's that were the subject of the earlier license agreement.  Keystone now seeks an injunction to prevent Basalite from using those patents and trademarks.

## II.  STANDARD OF REVIEW

To obtain a preliminary injunction, Keystone must establish four things: (1) that it is likely to succeed on the merits; (2) that it is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest.  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Federal courts in the Eighth Circuit commonly refer to these as "the *Dataphase* factors," after an Eighth Circuit case in which they were set forth.  *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc).  This Court will do likewise in this order.

The Court notes, though, that the preliminary injunction sought by Keystone "involves substantive matters unique to patent law and, therefore, is governed by the law of [the Federal Circuit]."  *Hybritech, Inc. v. Abbott Labs.*, 849 F.2d 1446, 1451 n.12 (Fed. Cir. 1988).  In patent cases, the Federal Circuit has held that a district court should deny a preliminary-injunction motion if the alleged infringer "raises a substantial question concerning either infringement or validity, i.e., asserts an infringement or invalidity defense that the patentee cannot prove lacks substantial merit . . . ."  *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350-51 (Fed. Cir. 2001) (internal quotation marks omitted).

This standard is arguably inconsistent with the first of the four *Dataphase* factors. *Dataphase* does not require that the movant "prove" anything about the merits of the underlying dispute to be entitled to a preliminary injunction; instead, *Dataphase* requires only that the movant establish a likelihood of prevailing on the merits.  And obviously a patentee can establish that it is likely to prevail on the merits even if the non-movant raises a substantial question about

-4-

infringement or validity.  A question can be "substantial" even if it is not likely to result in a ruling in favor of the party raising it.

But unless and until the Federal Circuit brings its preliminary-injunction standard in line with the standard applied in non-patent cases by the other federal courts of appeals,[1] this Court is bound to follow the case law of the Federal Circuit.  Thus, when this Court refers to the "*Dataphase* factors," it should be understood that with respect to the patent-related claims, the Court is applying the first *Dataphase* factor as modified by the Federal Circuit.

### III.  DISCUSSION

Keystone seeks to enforce three types of rights against Basalite: rights conferred by utility patents; rights conferred by design patents; and trademark rights.  The Court discusses each type of right in turn.

#### A.  Utility Patents

#### 1.  '561 Patent

Keystone contends that four models of Basalite blocks — Standard, Standard II, Compac, and KeySystem I — infringe claim 21 of the U.S. Patent No. 6,615,561 ("the '561 patent").[2]

---

[1]*See Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, 660 F.3d 1293, 1300 (Fed. Cir. 2011) (O'Malley, J., dissenting) ("I believe our precedent regarding the propriety of preliminary injunctive relief in patent cases should be rethought and revised at our earliest opportunity.").

[2]In its claim chart, Keystone also accused these blocks of infringing U.S. Patent No. 7,654,776 ("the '776 patent").  Keystone Claim Chart at 27-28.  But as Basalite correctly pointed out in opposing Keystone's preliminary-injunction motion, Keystone's complaint makes no mention of this particular patent.  Basalite Mem. Opp. Pl. Mot. PI ("Basalite PI Opp.") at 1 [Docket No. 83]; Am. Compl. ¶ 70 [Docket No. 13].  Keystone did not respond to this point in its reply memorandum, and thus Keystone effectively conceded that no injunction should issue with respect to the '776 patent.  In any event, the Court is not going to grant a preliminary injunction

(continued...)

Schramm Aff. Ex. C ("Keystone Claim Chart") at 31 [Docket No. 70-1].  For present purposes, at least, Basalite effectively concedes infringement.  But Basalite argues that claim 21 of the '561 patent is invalid and, accordingly, that the Court should deny Keystone's preliminary-injunction motion with respect to these four models of blocks.

According to Basalite, claim 21 of the '561 patent is invalid under the so-called "on-sale bar" of 35 U.S.C. § 102(b), which forbids obtaining a patent on an invention if "the invention was . . . on sale in this country, more than one year prior to the date of the application for patent in the United States . . . ."  35 U.S.C. § 102(b).  Specifically, Basalite contends that by mid-November 1999 (at the latest), Basalite sold Standard and Compac blocks meeting every limitation of claim 21.  Basalite PI Opp. at 16.  Because the application for the '561 patent was filed on June 7, 2001, Basalite's sale of such infringing products[3] prior to June 7, 2000 would render claim 21 of the '561 patent invalid under § 102(b).

To establish that it sold an infringing product by mid-November 1999, Basalite marshals a variety of evidence about how the design of the Standard and Compac blocks changed in the roughly ten years between 1989 (when the blocks were first introduced) and late 1999.  Specifically, Basalite offers the following documentary evidence: (1) a Keystone engineering drawing dated December 24, 1993, McNear Decl. Ex. AA [Docket No. 84-1]; (2) a mold drawing dated February 9, 1995, McNear Decl. Ex. BB [Docket No. 84-2]; and (3) a mold drawing dated November 15, 1999, McNear Decl. Ex. CC [Docket No. 84-3].  Basalite also

---

[2](...continued)
with respect to a patent that is not listed in the complaint.

[3]The Court here uses the phrase "infringing product" as shorthand for "product that meets every limitation of claim 21 of the '561 patent."

offers the declaration of Bradley McNear, a Basalite employee who has worked as a production manager and plant manager for many years.  McNear Decl. ¶ 2 [Docket No. 84].  McNear describes how the design of Standard and Compac blocks changed from 1989 to mid-November 1999, *id.* ¶¶ 4-20, and he asserts that by mid-November 1999, Basalite's Standard and Compac blocks met every limitation of claim 21 of the '561 patent, *id.* ¶ 21.

In response, Keystone does not actually deny that Basalite sold infringing Standard and Compac blocks by mid-November 1999.  Instead, Keystone challenges Basalite's proof in three ways.  First, Keystone argues that Basalite's evidence of invalidity is insufficiently corroborated.  Keystone Reply Mem. at 2-3 [Docket No. 92].  Second, Keystone argues that Basalite's evidence is inadequate because Basalite has not "produce[d] a reference that discloses each and every element of the claimed invention."  *Id.* at 3.  And third, Keystone argues that Basalite's evidence is inadequate because it does not "enable one of ordinary skill in the art to make the invention without undue experimentation."  *Id.*  The Court rejects all three arguments.

Keystone's second and third arguments rest on a misunderstanding of the word "reference" as that term is used in patent law.  Underlying both arguments is the premise that a "reference" must be some type of document.  This is simply incorrect.  In fact, "prior art sources ('references') . . . are those mentioned in [35 U.S.C. §] 102(a): prior knowledge *or use*, prior patents, and prior publications."  Donald S. Chisum, 2 *Chisum on Patents* § 5.03[3] (2011).  In other words, an invalidating prior-art reference need not be a document; it can be an *object* that is *used*.  When the prior-art reference is an object — as Basalite contends it is here — the question is not whether the object "discloses" the claim limitations, as a document would; the question is whether the object *meets* the claim limitations.  And it makes no sense to talk about whether an

allegedly invalidating prior-art object enables someone to "make the invention without undue experimentation." The object is alleged to *be* the invention — and, by virtue of this fact, to be anticipatory prior art.

Keystone's argument with respect to corroboration does, at least, make sense in terms of the applicable legal rules. In general, when a party seeks to invalidate a patent by showing an anticipatory public use of the invention, oral testimony alone is insufficient, and some type of corroborating evidence is required. *See Juicy Whip, Inc. v. Orange Bang, Inc.*, 292 F.3d 728, 737-38 (Fed. Cir. 2002) ("Generally, oral testimony of prior public use must be corroborated in order to invalidate a patent."). Whether corroborating evidence is sufficient is judged by a "'rule of reason,'" *id.* at 741, and the most valuable corroborating evidence is "physical records that were made contemporaneously with the alleged prior invention," *id.* at 743.

Basalite has offered more than mere witness testimony to support its contention that it sold infringing blocks by mid-November 1999. Basalite has offered a series of engineering drawings, made at the time the blocks were manufactured, to show how the limitations of claim 21 of the '561 patent were incorporated into the blocks. Under a "rule of reason" analysis, the Court finds that this is sufficient corroborating evidence to allow a jury to consider Basalite's argument that the '561 patent is invalid under § 102(b).

The Court therefore finds that Basalite has, at a minimum, raised a substantial question as to the validity of claim 21 of the '561 patent. Indeed, given the weakness of Keystone's response to Basalite's invalidity argument, the Court finds it likely that Basalite will establish at trial that claim 21 of the '561 patent is invalid under § 102. Further, Keystone has provided little evidence that it will suffer irreparable harm if Basalite continues to sell the accused blocks and is later

found to have infringed claim 21 of the '561 patent.  Accordingly, the *Dataphase* factors weigh against granting a preliminary injunction with respect to the Standard, Standard II, Compac, and KeySystem I blocks.

### 2.  Wall Patents ('474, '352, '213, '981, and '192 Patents)

Keystone contends that four models of Basalite blocks — Verazzo, Potenzo, Country Manor, and Century/Half Century Wall — infringe certain claims of U.S. Patent No. 7,011,474 ("the '474 patent").  Keystone Claim Chart at 22-26.  Keystone further contends that three of these four models — Verazzo, Potenzo, and Country Manor — infringe various claims of four patents:  U.S. Patent No. 6,149,352 ("the '352 patent"), U.S. Patent No. 6,447,213 ("the '213 patent"), U.S. Patent No. 6,637,981 ("the '981 patent"), and U.S. Patent No. 6,893,192 ("the '192 patent").  Keystone Claim Chart at 1-21.  Because all five of these patents are directed mainly to a type of wall, the Court will refer to them collectively (as do the parties) as "wall patents."[4]

In response, Basalite makes three arguments.  First, Basalite challenges the sufficiency of Keystone's evidence of infringement.  Basalite PI Opp. at 3-5.  Second, Basalite denies that it infringes any asserted claim, either directly or indirectly.  Basalite PI Opp. at 5-7.  And third, Basalite says that certain claims of the asserted patents are obvious and therefore invalid. Basalite PI Opp. at 17-28.

The Court rejects Basalite's challenge to the sufficiency of Keystone's infringement evidence.  Keystone has provided an affidavit of a person of skill in the art, John Schramm, who attests that the asserted claims cover the accused products.  Schramm Aff. ¶¶ 22-24.  Keystone

---

[4]A table showing which specific claims of the wall patents are being asserted against which particular blocks, and what each claim is generally directed to, is attached to this opinion as Appendix A.

has supported Schramm's affidavit with documentary evidence.  Exs A-U to Keystone Claim

Chart [Docket Nos. 70-2 at 10 to 70-9, 71-1 to 71-7].  Basalite says that the documentary

evidence is insufficiently authenticated and says that Schramm's affidavit "is not based on any

personal knowledge and is conclusory."  Basalite PI Opp. at 4.  But Schramm says that his

affidavit *is* based on personal knowledge, and the allegations in Keystone's claim chart — which

Schramm refers to in his affidavit — relate the limitations in each asserted patent claim to

particular features of the accused products.  *See* Schramm Aff. ¶¶ 9 ("I am personally familiar

with the facts and circumstances described in this affidavit."), 22-24 (referring to claim chart and

associated exhibits).  Even if Basalite is correct that some of the exhibits to the claim chart are

not properly authenticated, the Court finds that the claim chart and Schramm's affidavit are

sufficient, at the preliminary-injunction stage, to support Keystone's infringement allegations.

The Court also rejects Basalite's noninfringement defenses.  The parties seem to agree

that because Basalite primarily sells blocks and does not make walls, Basalite does not directly

infringe any of the wall patents.  But Basalite further argues that it does not infringe the patents

indirectly, either by inducing infringement or by contributorily infringing.  Basalite PI Opp.

at 6-7.

With respect to inducement, Basalite argues that it did not induce infringement because it

did not know of the patents.  *Id.*  But Keystone is moving for a preliminary injunction — a

*forward-looking* remedy.  Basalite obviously knows about the asserted patents *now*, so Basalite's

past ignorance cannot be a defense to allegations that, going forward, Basalite is inducing

infringement.

With respect to contributory infringement, Basalite's attorney contends that the blocks have substantial noninfringing uses. If true, this would be a defense to a charge of contributory infringement. *See* 35 U.S.C. § 271(c). But Basalite has provided no evidence to show that the accused blocks do, in fact, have substantial noninfringing uses.

In short, Keystone offers evidence that Basalite, by producing the accused blocks, is infringing the wall patents indirectly, by either inducing or contributing to infringement. In response, Basalite has offered an irrelevant argument (with respect to inducement) and an argument unsupported by evidence (with respect to contributory infringement). Keystone's allegations and evidence of indirect infringement thus stand unrebutted.

Finally, the Court rejects Basalite's defense that some of the asserted patent claims are invalid as obvious. To begin with, even if Basalite could prove beyond dispute that the claims it challenges are, in fact, obvious, it would not matter, because Keystone has asserted numerous *other* claims — claims that Basalite does *not* challenge as obvious — against Basalite's Verazzo, Potenzo, Country Manor, and Century/Half Century Wall blocks. *See* Appendix A.

Further, with respect to the challenged claims, the Court finds that Basalite's obviousness challenge is unpersuasive. Basalite has not provided any evidence from a person of ordinary skill in the art that the challenged claims are obvious. Instead, Basalite refers the Court to three references, two of which were before the United States Patent and Trademark Office ("PTO") during prosecution of some of the challenged patents. *See* Basalite PI Opp. at 18-26; Keystone Reply Mem. at 4-5. These three references, accompanied only by attorney argument, do not raise a substantial question as to the validity of the challenged claims.

-11-

The Court therefore finds that Keystone is likely to prevail in showing that Basalite has indirectly infringed at least some of the claims of the wall patents by making and selling the following four models of blocks:  (1) Verazzo, (2) Potenzo, (3) Country Manor, and (4) Century/Half Century Wall.  Given this likelihood of success, and given that the balance of hardships is either neutral or tips in Keystone's favor, the Court finds that the *Dataphase* factors warrant enjoining Basalite from manufacturing or selling these blocks.

### 3.  '141 Patent

Keystone contends that Basalite's 133 Elite blocks infringe claim 1 of U.S. Patent No. 7,780,141 ("the '141 patent").  Keystone Claim Chart at 29-30.  In response, Basalite does not challenge the patent's validity.  Instead, Basalite argues that the 133 Elite blocks do not infringe.  The Court rejects Basalite's noninfringement argument.

Claim 1 of the '141 patent is directed to a mold for making two wall blocks at a time, one on each side of the mold.  A plan (or overhead) view of one embodiment of the claimed mold is shown in figure 22A of the '141 patent, excerpted here:



'141 Pat. Fig. 22A.

According to Basalite, the accused mold for its 133 Elite blocks does not infringe — even though it looks almost exactly like the mold pictured above, *see* Keystone Claim Chart Ex. L [Docket No. 71] — because it does not meet a limitation that requires the "first and second leg forming portions" of each side of the mold to be "asymmetrical with respect to a plane that bisects the . . . side rail and does not intersect the . . . end rails . . . ." '141 Pat. col. 12:63 to col. 13:3; Basalite PI Opp. at 8.  According to Basalite, the accused mold's leg-forming portions "are identical, not 'asymmetrical'" with respect to a plane bisecting the side rails, and thus the mold does not infringe claim 1 of the '141 patent.  Basalite PI Opp. at 8.

Basalite supports its argument with an annotated version of Figure 22A of the '141 patent.  Straight Decl. Ex. DD [Docket No. 86-1].  In this annotated drawing, Basalite has drawn two lines, one bisecting each side rail, and Basalite contends that if either side of the mold is split along the associated bisecting line, the resulting leg-forming portions are not asymmetrical — which amounts to saying that they are symmetrical.  To better illustrate Basalite's argument, the Court has modified Basalite's illustration so that the two leg-forming portions of one side of the mold are visibly separated from each other along the associated bisecting line, as shown here:



As this drawing shows, Basalite is correct in asserting that the leg-forming portions of

one side of the mold, when the mold is split along Basalite's proposed line, are more-or-less

identical.  But this does not mean that they are *symmetrical* in the ordinary sense of the word.

Basalite's argument rests upon a fundamental misunderstanding of the nature of symmetry.

Specifically, Basalite confuses two different concepts: symmetry and congruence.

Basalite's error can be easily demonstrated with the following two crude drawings of a

butterfly's wings:



*Symmetrical*     *Congruent but not symmetrical*

A butterfly's wings, when opened, are symmetrical about the butterfly's body.[5]  In the drawing

on the left above, the line of symmetry that runs through the butterfly's body is illustrated with a

dashed line.  The right and left wings are symmetrical to one other with respect to the line of

symmetry.

But the butterfly's left wing is not symmetrical with respect to *itself*.  Rather, it is

*congruent* with itself.[6]  In the drawing on the right above, the butterfly's left wing is shown

twice.  As the drawing illustrates, the two left wings are congruent — and thus, in Basalite's

terminology, "identical" — but they are not symmetrical.

To return to Basalite's version of Figure 22A, Basalite has shown that the leg portions in

the accused mold (and in the mold pictured in the patent) are, when split along a particular

---

[5]More formally, symmetry can be defined as the "[e]xact correspondence of form and
constituent configuration on opposite sides of a dividing line or plane or about a center or an
axis."  *American Heritage Dictionary* 1753 (4th ed. 2000).

[6]Shapes are congruent, as that term is used in geometry and mathematics, if they
"coincid[e] exactly when superimposed . . . ."  *American Heritage Dictionary* 388 (4th ed. 2000).

bisecting plane, roughly congruent with each other.  But Basalite has not shown that they are symmetrical.

Accordingly, given the inadequacy of Basalite's noninfringement position, the Court finds that Keystone is likely to succeed in showing that Basalite's 133 Elite blocks infringe claim 1 of the '141 patent.  Given this likelihood of success, and given that the balance of hardships is either neutral or tips in Keystone's favor, the Court finds that the *Dataphase* factors warrant enjoining Basalite from manufacturing or selling 133 Elite blocks.

### B.  Design Patents

### 1.  Standard for Infringement

Under *Egyptian Goddess, Inc. v. Swisa, Inc.*, the so-called "ordinary observer" test is "the sole test for determining whether a design patent has been infringed."  543 F.3d 665, 678 (Fed. Cir. 2008).[7]  Under the "ordinary observer" test, the accused design must so closely resemble the claimed design that an ordinary observer would confuse the two.  *Gorham Co. v. White*, 81 U.S. (14 Wall.) 511, 528 (1871) ("[I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other."); *Egyptian Goddess,* 543 F.3d at 678 (citing *Gorham*).  Because a patented design is generally captured better in the design patent's illustrations than it can be in words, "the preferable course ordinarily will be for a district court not to attempt to

---

[7]*Egyptian Goddess* discarded a second test for design-patent infringement — the "point of novelty" test — that the Federal Circuit had previously required courts to apply.  543 F.3d at 678 ("[W]e hold that the 'point of novelty' test should no longer be used in the analysis of a claim of design patent infringement.").

-16-

'construe' a design patent claim by providing a detailed verbal description of the claimed design." *Egyptian Goddess,* 543 F.3d at 679.

## 2.  Patents Asserted Against 133 Elite Blocks

Keystone contends that Basalite's 133 Elite blocks infringe two design patents:  U.S. Patent No. D610,710 ("the D710 patent") and U.S. Patent No. D610,711 ("the D711 patent").[8] Keystone Claim Chart at 32.  As evidence, Keystone relied in its opening memorandum on pictures of 133 Elite blocks found in some Basalite promotional materials.  Keystone Claim Chart Exs. E [Docket No. 70-7], M [Docket No. 71-1].  With its reply memorandum, Keystone offered one additional picture as evidence.  Suppl. Schramm Aff. Ex. 1 [Docket No. 95-1]. Before addressing the significance of this additional picture, the Court first discusses the evidence and argument in Keystone's opening memorandum and in Basalite's response.

Basalite offers three arguments in response to Keystone's opening memorandum.  First, Basalite says that the promotional material cited by Keystone does not show all of the features of the patented designs, and thus Keystone has not shown a likelihood of proving infringement. Basalite PI Opp. at 29-30.  Second, Basalite contends that the D710 and D711 patents are invalid as anticipated under 35 U.S.C. § 102 because items with the patented design were sold — or at least depicted in promotional material — more than one year before the filing date of the two patents.  *Id.* at 32.  As evidence, Basalite relies on printouts of Keystone's website dated 2006 and retrieved from the Internet Archive (or "Wayback Machine"); both patents were filed on November 7, 2008, so an anticipatory reference from 2006 would be invalidating.  Third,

---

[8]Keystone initially accused Basalite's 133 Elite blocks of infringing a third design patent, D501,935.  Keystone Claim Chart at 32.  Keystone later withdrew the accusation.

Basalite argues that the features claimed in D710 and D711 are primarily functional, not

ornamental, and thus the patents are invalid.  *Id.* at 32-33.

Basalite's third argument is easily dismissed.  Basalite has provided no evidence from a

person of skill in the art that the patented designs are primarily functional and therefore invalid.

*See Power Controls Corp. v. Hybrinetics, Inc.*, 806 F.2d 234, 238 (Fed. Cir. 1986) ("If the

patented design is primarily functional rather than ornamental, the patent is invalid.").  Basalite's

counsel's arguments about the functionality of the patented designs do not raise a substantial

question of invalidity.

But Basalite's noninfringement and anticipation arguments merit further consideration.

First, the Court notes that Keystone and Basalite have mirrored each other's arguments and, in

doing so, each party has contradicted itself.  Specifically, Keystone challenges Basalite's

evidence of anticipation — pictures from Keystone's website — in part on the basis that the

pictures cited by Basalite do not show every feature of the patented design.[9]  Keystone Reply

---

[9]Keystone also argues that the pictures are not sufficiently authenticated because Basalite
has not offered evidence of the reliability of printouts from the Internet Archive.  Keystone Reply
Mem. at 5.  For purposes of Keystone's preliminary-injunction motion, the Court rejects the
argument.  The Internet Archive has existed since 1996, and federal courts have regularly
accepted evidence from the Internet Archive.  *See, e.g.*, *St. Luke's Cataract & Laser Inst., P.A. v.
Sanderson*, No. 8:06-CV-223, 2006 U.S. Dist. LEXIS 28873, at *6, 2006 WL 1320242, at *2
(M.D. Fla. May 12, 2006) (concluding that a printout from the Internet Archive could be
authenticated by way of an affidavit from a "representative of Internet Archive with personal
knowledge of its contents, verifying that the printouts Plaintiff seeks to admit are true and
accurate copies of Internet Archive's records"); *Healthcare Advocates, Inc. v. Harding, Earley,
Follmer & Frailey*, 497 F. Supp. 2d 627 (E.D. Pa. 2007) ("By way of background, the Internet
Archive is a nonprofit organization that has created an online library of digital media in an effort
to preserve digital content for future reference.  Its digital database is equivalent to a paper
library, but is filled with digital media like websites instead of books.  The library includes a
collection of chronological records of various websites which Internet Archive makes available at
no cost to the public via the Wayback Machine.  The library's records include more than 85

(continued...)

Mem. at 5.  Yet Keystone itself cites very similar (and in some instances, identical) pictures in support of its infringement argument.  Keystone Claim Chart Exs. E, M.  If Keystone is correct in saying that Basalite's photos fail to show *anticipation*, then the photos cited by Keystone in its claim chart necessarily fail to show *infringement*.

On the other side, Basalite challenges Keystone's evidence of infringement — pictures from Basalite's promotional material — on the basis that the pictures cited by Keystone do not show every feature of the patented design.  Basalite PI Opp. at 30.  Yet, as noted, Basalite cites very similar (and in some cases, identical) pictures in support of its anticipation argument.  Straight Decl. Ex. NN [Docket No. 86-4].  If Basalite is correct in saying that Keystone's pictures fail to show *infringement*, then the pictures cited by Basalite necessarily fail to show *anticipation*.

Having reviewed the pictures cited by Keystone in its claim chart, the Court agrees with Basalite that these pictures — by themselves — fail to establish that Keystone is likely to succeed in proving that the 133 Elite blocks infringe the D710 or D711 patents.  None of these pictures show the bottom surfaces of a 133 Elite block, and the Court therefore cannot conclude that 133 Elite blocks embody the patented designs, which relate to *every* surface of the blocks.  Relatedly, the Court agrees with Keystone that the pictures cited by Basalite to support its anticipation argument do not — by themselves — raise a substantial question of invalidity with

---

[9](...continued)
billion screenshots of web pages which are stored on a computer database in California.  Internet Archive's database provides users with the ability to study websites that may have been changed or no longer exist.").

respect to the D710 and D711 patents, because those pictures do not depict the bottom surfaces of the blocks.

But Keystone submitted one additional photograph of a 133 Elite block with its reply memorandum.[10]  Suppl. Schramm Aff. Ex. 1.  And that photograph shows the bottom surface of the block.  The Court agrees with Keystone that this photograph, together with the pictures in Basalite's promotional material that Keystone cited in its opening memorandum, establish that Keystone is likely to prevail in proving that all models of the 133 Elite block infringe the D711 patent (which covers blocks with any face design) and that some models infringe the D710 patent (which covers blocks with specific face designs).

The Court further finds, however, that this same photo *also* establishes that Basalite has raised a substantial question as to whether the D710 and D711 patents are invalid as anticipated. The Court has no reason to believe that the design of the 133 Elite blocks changed between 2006 (the date of the pictures from Keystone's website upon which Basalite's invalidity defense rests) and 2011 (the date of the picture supplied in support of Keystone's reply brief).  Indeed, based on Keystone's own evidence, the Court has reason to doubt that any such change happened:  Both the 2006 Keystone brochure relied on by Basalite and the later Basalite promotional materials relied on by Keystone include what appear to be identical pictures of the 133 Elite blocks.

---

[10]Keystone also seems to imply in its reply memorandum that Basalite's monthly reports to Keystone of license fees show that Basalite was using the D710 and D711 patents.  Keystone Reply Mem. at 5 ("Basalite's Licensee Monthly Reports show that Basalite made and sold 133 Elite (protected by D610,710 . . . and D610,711) . . . .").  Keystone appears to be mistaken.  The monthly reports show that Basalite paid a license fee for making 133 Elite blocks; the reports are entirely silent (as far as the Court can tell) about what patents cover those blocks.

As noted, Keystone says that the pictures in Basalite's promotional materials show that the 133 Elite blocks infringe the D710 and D711 patents, and Basalite says that virtually identical photos from a brochure on Keystone's website show that the 133 Elite blocks *invalidate* the D710 and D711 patents because the blocks were depicted or sold more than a year before the patents' filing date.  The Court sees no reason to give a different effect to the virtually identical photos submitted by the parties.  The photos, by themselves, establish *neither* infringement nor anticipation.  But the photos, together with the later photo of the bottom of a 133 Elite block submitted by Keystone with its reply memorandum, make it likely that *both* infringement *and* anticipation will be established by (respectively) Keystone and Basalite.

The Court therefore finds that Basalite has, at a minimum, raised a "substantial question" as to the validity of the D710 and D711 patents.  Further, Keystone has provided little evidence that it will suffer irreparable harm if Basalite continues to sell the accused blocks and is later found to have infringed Keystone's design patents.  Accordingly, with respect to the 133 Elite block, the *Dataphase* factors weigh against granting a preliminary injunction based on Keystone's design-patent-infringement theory.[11]

### 3.  Patents Asserted Against Ledge Creek Blocks

Keystone contends that Basalite's Ledge Creek blocks infringe two design patents:  U.S. Patent No. D620,615 ("the D615 patent") and U.S. Patent No. D621,070 ("the D070 patent"). Keystone Claim Chart at 32.  As evidence, Keystone relies on two things: engineering drawings of molds for different models of Ledge Creek blocks, and a promotional flyer with a picture of a

---

[11]As noted, the Court is granting an injunction with respect to the 133 Elite blocks based on Keystone's allegations that the blocks infringe the '141 patent.  Thus, whether the blocks infringe the D710 and D711 patents makes no practical difference at this point in the litigation.

wall assembled of Ledge Creek blocks.  Keystone Claim Chart Exs. N [Docket No. 71-2 at 8-19],

O [Docket No. 71-2 at 20-21].[12]

With respect to the D070 patent, Basalite says that Keystone's *evidence* is insufficient

because the evidence does not show that any Ledge Creek block includes all of the features in

any claimed design.  Basalite PI Opp. at 31.  With respect to the D615 patent, Basalite says that

Keystone's *allegations* are defective because Keystone does not allege that any Ledge Creek

block includes all of the features found in any particular claimed design.  *Id.* at 30-31.  Basalite

does not challenge either patent's validity.

Both patents claim similar block designs, but the D070 patent is broader than the D615

patent.  The blocks claimed in both patents have the same roughly trapezoidal shape, and both

patents cover blocks with a cavity or cavities running from side-to-side through the block and

having one of four designs: (1) a single rectangular cavity; (2) a single oval (or racetrack-shaped)

cavity; (3) a pair of roughly square cavities; or (4) a pair of circular cavities.  The four different

cavity designs are depicted in these figures from the D070 patent (the blocks are shown upside

down):

---

[12]Keystone also submitted some photographs of Ledge Creek blocks with an affidavit that accompanied its reply memorandum.  Suppl. Schramm Aff. Exs. 4-6 [Docket Nos. 95-4 to 95-6]. But nowhere in Keystone's reply memorandum does Keystone say anything about the significance of those photographs.  Accordingly, the Court has not considered them.  In any event, because the Court grants Keystone's motion with respect to the Ledge Creek blocks on the basis that the exhibits to Keystone's claim chart show that Ledge Creek blocks likely infringe the D070 patent, the later-provided photographs are irrelevant.



D070 Pat. Figs. 1, 9, 17, 25; *see also* D615 Pat. Figs. 1, 9, 17, 25.

The two patents differ, however, with respect to the design for the block's face.  The D615 patent covers blocks with three different face designs: (1) a rough stone surface covering the entire face of the block, without any internal divisions (embodiments 1-4); (2) a rough stone surface covering the block's face and divided by a vertical groove into two areas that make up, respectively, one-third and two-thirds of the face (embodiments 5-8); and (3) a rough stone surface cover the block's face and divided by a T-shaped groove into three areas, one taking up the bottom half of the face, and two equal areas taking up the top half of the face (embodiments 9-12).  The three different faces are depicted in these figures from the D615 patent (again, the blocks are shown upside down):



D615 Pat. Figs. 9, 41, 73.  The D070 patent, by contrast, covers a block with *any* face design, as long as it has the other features shown in the patent (most notably, the claimed block shape and a central cavity or cavities with one of the four claimed designs).

Having reviewed Keystone's evidence, the Court finds that Keystone is likely to prevail in showing that the Ledge Creek blocks infringe the D070 patent.  As shown below, a direct comparison of figures from the D070 patent with excerpts from the engineering drawings for Ledge Creek blocks submitted by Keystone establishes that Ledge Creek blocks closely resemble the patented design:



*Figures 12, 14, and 16 from the D070 patent*



*Excerpts from engineering drawings for Ledge Creek blocks*

D070 Pat. Figs. 12, 14, 16; Keystone Claim Chart Ex. N [Docket No. 71-2 at 10].

By contrast, Keystone's evidence does not establish that Keystone is likely to prevail in showing that the Ledge Creek blocks infringe the D615 patent.  In neither the engineering drawings nor the promotional photograph provided by Keystone can the Court discern a block

with one of the three face designs shown in the D615 patent.[13]  *See* Keystone Claim Chart Exs.

N, O.

But Keystone's inability (at this stage) to show infringement of the D615 patent is of little

moment, given that the Court finds a likelihood of success with respect to the D070 patent.

Given this likelihood of success, and given that the balance of hardships is either neutral or tips

---

[13]As noted, Basalite also argues that Keystone's infringement allegations with respect to the D615 patent are defective because Keystone tried to mix and match features from different claimed designs.  In other words, Basalite complains that Keystone did not allege in its claim chart that the Ledge Creek blocks have *all* of the features of any particular embodiment claimed in the D615 patent.  Rather, according to Basalite, Keystone alleged that the Ledge Creek blocks have some features from certain embodiments and other features from different embodiments. *See* Basalite PI Opp. at 30 ("Keystone cannot simply 'mix and match' features of one embodiment with another.").

Basalite has accurately described Keystone's infringement allegations as set forth in Keystone's claim chart, and those allegations are indeed legally insufficient.  If a design patent covers two designs — one with features A and B and the other with features B and C — a design with only features A and C would not infringe the design patent.  As it happens, however, Keystone's claim chart is simply sloppy.

Keystone's claim chart says that Ledge Creek blocks infringe the D615 patent because the blocks have the type of *cavity* found in the D615 patent's *second* embodiment and the type of *face style* found in the D615 patent's *fifth* and *ninth* embodiments.  As noted, this is plainly an improper way to allege infringement.

But Keystone's infringement allegations amount, in effect, to an allegation that Ledge Creek blocks infringe the *sixth* and *tenth* embodiments claimed in the D615 patent.  That is, the sixth embodiment, standing alone, has the type of cavity (oval) found in the D615 patent's second embodiment and the type of face style (rough stone with a single dividing groove) found in the D615 patent's fifth embodiment — the two embodiments referred to in Keystone's claim chart.  And the tenth embodiment, standing alone, has the type of cavity (oval) found in the D615 patent's second embodiment and the type of face style (rough stone with a T-shaped dividing groove) found in the D615 patent's ninth embodiment — again, the two embodiments referred to in Keystone's claim chart.  Accordingly, Keystone's claim chart alleges — albeit in an inexplicably indirect way — that some Ledge Creek blocks have all of the features of the sixth embodiment, and that some have all of the features of the tenth embodiment.

The Court therefore does not find Basalite's "no mixing and matching" argument sufficient to reject Keystone's infringement allegations.

in Keystone's favor, the Court finds that the *Dataphase* factors warrant enjoining Basalite from

manufacturing or selling Ledge Creek blocks.

### C. Trademark Claims

Keystone seeks to enjoin Basalite from using 11 trademarks registered to Keystone.[14]

Without respect to 10 of these 11 trademarks, Basalite has agreed to be enjoined from using them

(though Basalite does not concede that it infringed them).  Accordingly, for present purposes,

only one trademark remains in dispute: "Palazzo Stone."

There is no dispute that Keystone registered the "Palazzo Stone" mark with the PTO.  But

Basalite argues that Keystone registered the mark wrongfully.  Basalite contends that one of its

employees came up with the mark and that Basalite used the mark in commerce before Keystone

did, and therefore Basalite is the true owner of the mark.  Basalite PI Opp. at 33-34.

Keystone concedes, for present purposes, that a Basalite employee came up with the name

"Palazzo Stone."  Hr'g Tr. at 47, July 5, 2011 [Docket No. 104].  Nonetheless, Keystone makes

three arguments for why the Court should enjoin Basalite from using the mark.

First, Keystone argues that Basalite's evidence does not show that Basalite used the mark

in commerce before Keystone did.  Keystone Reply Mem. at 7.  Second, Keystone says that

because it registered the mark with the PTO, any use of the mark by Basalite is, in effect, a use

---

[14]The 11 trademarks asserted by Basalite are: (1) Keystone Retaining Wall Systems
(Registration No. 2,468,614); (2) Keystone Century Wall (Registration No. 2,979,499);
(3) Keystone 133 Elite (Registration No. 3,304,138); (4) Legacy Stone (Registration
No. 2,072,726); (5) Ledge Creek (Registration No. 3,672,804); (6) Sedona Stone (Registration
No. 2,577,249); (7) Potenzo Stone (Registration No. 2,464,620); (8) Vista DSM (Registration
No. 3,231,066); (9) K Watermark Design (Registration Nos. 3,269,376 & 3,055,148);
(10) Keystone & K Watermark (Registration Nos. 3,144,403 & 3,065,698); and (11) Palazzo
Stone (Registration No. 3,208,860).

for Keystone's benefit under the "related companies" doctrine.  *Id.* at 7-8.  And third, Keystone

says that even if Basalite developed the trademark, it belongs to Keystone under the terms of the

parties' agreement because it is an improvement in know-how to which Keystone is entitled.

Hr'g Tr. at 42-46, July 5, 2011.  None of these arguments is sufficient to persuade the Court that

Basalite's use of the "Palazzo Stone" mark infringes Keystone's trademark rights.

To begin with, the Court finds that Basalite has provided strong evidence that it

developed and used the "Palazzo Stone" mark before Keystone did.  Basalite has furnished

evidence that Basalite developed a brochure featuring the mark by mid-January 2006 and sold a

Palazzo Stone block some time in February 2006.  Bonnell Decl. ¶ 9 [Docket No. 85].  Basalite

has also furnished evidence that Keystone relied on marketing materials from *Basalite* to support

Keystone's application to register the trademark.  Straight Decl. ¶ 14 [Docket No. 86] & Ex. PP

[Docket No. 86-4].  Keystone has offered no evidence — other than the bare assertion in

Keystone's trademark application that it used the Palazzo Stone mark on February 15, 2006 —

that Keystone used the mark before Basalite did.  *See* Keystone Reply Mem. at 6-7.

The Court further finds that Keystone is not likely to succeed in showing that even if

Basalite used the "Palazzo Stone" mark before Keystone did, Basalite lacks rights in the mark.

Keystone's "related companies" argument is essentially circular.  According to Keystone, under

section 19 of the parties' license agreement, Basalite's "'use of the . . . Trademarks inures to the

benefit of'" Keystone, and thus Keystone was entitled to register "Palazzo Stone" under 15

U.S.C. § 1055.[15]  Keystone Reply Mem. at 8 (quoting License Agreement ¶ 19).  But

---

[15]Section 1055 provides:  "Where a registered mark or a mark sought to be registered is or
may be used legitimately by related companies, such use shall inure to the benefit of the

(continued...)

"Trademarks" is a defined term under the license agreement:  It means "the term 'KeyStone' . . . as well as other trademarks, trade names, or service marks owned by [Keystone] of which [Keystone] notifies [Basalite] in writing."  License Agreement ¶ 1(m).  For Basalite's use of the mark "Palazzo Stone" to inure to Keystone's benefit under the license agreement, the mark would need to be a mark "owned by" Keystone.  But whether Keystone owns the mark is precisely the question.  Keystone cannot establish ownership of the mark by appealing to a contract provision that does not even apply unless Keystone already *owns* the mark.

Finally, the Court rejects Keystone's argument that the "Palazzo Stone" mark is an improvement in "Know-How" that Keystone owns by virtue of ¶ 18(a) of the license agreement. For one thing, Keystone made this argument at oral argument after having made exactly the opposite argument in its reply memorandum.  *Compare* Hr'g Tr. at 42, July 5, 2011 ("How [Keystone] end[s] up with the trademark is answered by the agreement itself in paragraph 18.") *with* Keystone Reply Mem. at 8 ("[T]he name Palazzo Stone is *not* an improvement . . . under section 18(a) of the Basalite-Keystone Agreement.  Palazzo Stone is a trademark and trademarks are not covered under this section of the agreement." (emphasis added)).  The Court agrees with the argument that Keystone made in its reply memorandum — and not with the argument that Keystone made at the hearing.  In other words, the Court agrees that a trademark is not "Know-

---

[15](...continued)
registrant or applicant for registration, and such use shall not affect the validity of such mark or of its registration, provided such mark is not used in such manner as to deceive the public."  15 U.S.C. § 1055.

How" covered under ¶ 18(a) as that term is defined in ¶ 1(a).[16]  Further, even if the "Palazzo Stone" mark *were* "Know-How" under ¶ 18(a), under that very provision's terms, Basalite would still have "the non-exclusive right to exploit [the mark] directly without the right to license or sublicense."  License Agreement ¶ 18(a).

In short, Keystone has not shown that it is likely to prevail on a trademark-infringement claim against Basalite with respect to the "Palazzo Stone" mark.  Further, Keystone has provided little evidence that it will suffer irreparable harm if Basalite continues to use the "Palazzo Stone" mark and is later found to have infringed Basalite's trademark.  Accordingly, the *Dataphase* factors weigh against granting a preliminary injunction with respect to the "Palazzo Stone" trademark.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1.      The motion of plaintiff Keystone Retaining Wall Systems, Inc. for a preliminary
        injunction [Docket No. 62] is GRANTED IN PART as follows:

        a.      Until the Court orders otherwise, defendants Basalite Concrete Products,
                LLC, Pacific Coast Building Products, Inc., and Builders Marketplace, Inc.
                must not make, sell, or offer to sell the following blocks (or blocks not
                colorably distinct from them):

---

[16]Paragraph 1(a) defines "Know-How" to include, among other things, "marketing strategies . . . ."  License Agreement ¶ 1(a).  The Court rejects Keystone's argument, advanced for the first time at oral argument, that a trademark is a "marketing strategy."

        i.       Verazzo;

        ii.      Potenzo;

        iii.     Country Manor;

        iv.     Century/Half Century Wall;

        v.       133 Elite; and

        vi.     Ledge Creek.

b.     Until the Court orders otherwise, defendants Basalite Concrete Products, LLC, Pacific Coast Building Products, Inc., and Builders Marketplace, Inc. must not use or otherwise infringe the following trademarks:

        i.       Keystone Retaining Wall Systems (Registration No. 2,468,614);

        ii.      Keystone Century Wall (Registration No. 2,979,499);

        iii.     Keystone 133 Elite (Registration No. 3,304,138);

        iv.     Legacy Stone (Registration No. 2,072,726);

        v.       Ledge Creek (Registration No. 3,672,804);

        vi.     Sedona Stone (Registration No. 2,577,249);

        vii.    Potenzo Stone (Registration No. 2,464,620);

        viii.   Vista DSM (Registration No. 3,231,066);

        ix.     K Watermark Design (Registration Nos. 3,269,376 & 3,055,148); and

        x.      Keystone & K Watermark (Registration Nos. 3,144,403 & 3,065,698).

2.      The motion of plaintiff Keystone Retaining Wall Systems, Inc. for a preliminary

injunction [Docket No. 62] is DENIED in all other respects.

3.      Plaintiff Keystone Retaining Wall Systems, Inc. must post a $100,000 bond as

security with the Court in accordance with Fed. R. Civ. P. 65(c) and D. Minn.

LR 67.3.  As soon as Keystone Retaining Wall Systems, Inc. posts this bond —

but not before — this order becomes binding on Defendants Basalite Concrete

Products, LLC, Pacific Coast Building Products, Inc., and Builders Marketplace,

Inc.

Dated:  December 19, 2011                              s/Patrick J. Schiltz
                                                      Patrick J. Schiltz
                                                      United States District Judge

## Appendix A

The table below summarizes which claims of Keystone's "wall patents" are being asserted against which particular blocks, and what each claim is generally directed to. *See* Schramm Aff. Ex. C [Docket No. 70-1].

| Patent | Claim(s) | Directed to | Accused Basalite Blocks |
|--------|----------|-------------|-------------------------|
| '474 | 1, 12 | "wall block system" | Country Manor, Potenzo, Verazzo (field-split), Century/Half Century Wall |
| '474 | 6, 17 | "wall" | Country Manor, Potenzo, Verazzo (field-split), Century/Half Century Wall |
| '474 | 23 | "wall block system" | Country Manor, Potenzo, Verazzo (field-split) |
| '352 | 1 | "wall" | Country Manor, Potenzo, Verazzo |
| '213 | 1 | "wall block" | Country Manor, Potenzo (field-split), Verazzo (field-split) |
| '213 | 6 | "wall block system" | Country Manor |
| '213 | 15 | "wall" | Country Manor |
| '213 | 23 | "wall block" | Country Manor M; Country Manor V if used in a particular way |
| '213 | 29, 33 | "method for constructing a wall" | Country Manor |
| '213 | 37 | "wall block" | Country Manor, Potenzo, Verazzo |
| '213 | 38 | "wall block system" | Country Manor, Potenzo |
| '213 | 39 | "wall" | Country Manor, Potenzo |
| '213 | 40, 41 | "method for constructing a wall" | Country Manor, Potenzo |
| '981 | 1 | "wall block" | Country Manor, Potenzo, Verazzo |

| Patent | Claim(s) | Directed to | Accused Basalite Blocks |
|--------|----------|-------------|-------------------------|
| '981 | 7, 9, 15 | "wall block system" | Country Manor |
| '981 | 8, 14 | "wall block system" | Country Manor, Potenzo |
| '981 | 16, 17, 23 | "wall" | Country Manor |
| '981 | 22 | "wall" | Country Manor, Potenzo |
| '981 | 24 | "method for constructing a wall" | Country Manor, Potenzo |
| '192 | 1 | "wall" | Country Manor, Potenzo |
| '192 | 9 | "method for constructing a wall" | Country Manor, Potenzo; Verazzo (field-split) |
| '192 | 13 | "method for constructing a wall" | Country Manor, Potenzo |
| '192 | 17 | "wall block" | Country Manor, Potenzo, Verazzo (field-split) |